Filed 6/30/14  Rosso v. Fleck CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOANNE GALE ROSSO, | H039353 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No.  1-10-CV184541) |
| v. | |
| J. BYRON FLECK, et al., | |
| Defendants and Respondents. | |

Plaintiff Joanne Gale Rosso seeks review of a judgment entered after a jury trial on her action for legal malpractice against defendant J. Byron Fleck and his cross-complaint for breach of contract.[1]  Plaintiff asserts error in two instructions given to the jury after they began deliberating.  She further contends that the damages awarded to defendant were not based on evidence, but were the product of mere questions posed to plaintiff during her testimony, defendant's statements in closing argument, and the jury's confusion over the newly added instructions.  She also faults the court for not protecting her during defendant's closing argument, in which he acted in "a reprehensible and malicious manner."  Finally, plaintiff contends that the court abused its discretion by not

---

[1] Plaintiff sued Fleck and his law firm, The Law Offices of J. Byron Fleck, who will be referred to collectively as "defendant."

allowing her to have the court reporter read back testimony that would have helped her establish a breach of loyalty. We find no error and will therefore affirm the judgment.

*Background*

Defendant represented plaintiff from April 22, 2009 to October 19, 2009, in her action against Fenn C. Horton III and Pahl & McCay (collectively, Horton) for professional negligence and breach of fiduciary duty. That lawsuit eventually ended in an arbitration award of costs to Horton, after defendant withdrew from representing plaintiff. Her appeal from the judgment confirming the award was unsuccessful. (H035661)[2]

On October 8, 2010, plaintiff brought this action in propria persona against defendant and his law firm, claiming professional negligence and breach of contract. In her third amended complaint for "Breach of Contract and Fiduciary Duty,"[3] she alleged that defendant's "untimely withdrawal" from her case against Horton had caused her to incur sanctions for failing to appear for a deposition and to expend time preparing the case instead of looking for a new attorney. Defendant had also charged plaintiff "unconscionable fees" and inflated the time spent on her case, and generally performed "worthless" services throughout his representation of her. At some point defendant appears to have cross-complained for breach of the retainer agreement; although that pleading is not in the record before us, it was submitted to the jury on a special verdict form along with plaintiff's third amended complaint.

---

[2] Arbitrators had previously awarded Horton $21,389.97 for unpaid fees. That award was confirmed in a judgment entered in August 2008. (H035661)

[3] This pleading also alleged common count for money had and received, but the court struck that claim upon defendant's motion to strike the third amended complaint.

2

The jury heard testimony from plaintiff on November 26 and 27, 2012.[4]  She examined defendant on November 27, 28, and 29 and then rested.  Plaintiff argued that defendant had violated his attorney obligations to her by failing to communicate with her, making "ill-considered [and] unduly risky" decisions, failing to do research and conduct discovery, overcharging her, and withdrawing from the Horton case at a point when she would be unable to "move the case forward."

The jury retired for deliberations at the end of the day on November 30, 2012.  On December 3, the court read two instructions inadvertently left out of the instruction packet and answered a jury question.  Later that day, the jury reached a unanimous verdict, finding no breach of fiduciary duty or breach of contract by defendant.  On his cross-claim the jury again found for defendant and awarded him $3,545 for plaintiff's breach of contract.  The court entered judgment the next day, December 4, 2012, and on January 25, 2013, it denied plaintiff's motion for new trial or judgment notwithstanding the verdict.  Plaintiff then brought this timely appeal.

---

[4] Although plaintiff was representing herself at trial, she testified that she did have an attorney helping her in the case, whom she had already paid about $12,000.

*Discussion*[5]

Plaintiff's contentions on appeal are directed at three categories of asserted error. First, she argues, the court prejudiced her case by adding two instructions after the jury's deliberations had begun. She also takes issue with the jury's $3,545 award to defendant: this amount was not supported by evidence, she argues, but was only "mention[ed]" while she was testifying and then requested during defendant's closing argument. Neither questioning by an attorney nor closing argument is evidence, plaintiff reminds us. Plaintiff further asserts that the court abused its discretion by failing to protect her from defendant's "rant" during his closing argument. Finally, plaintiff faults the trial court for refusing to allow her to "direct the court reporter" to read back a portion of testimony that she believes would have contributed to an allegation of breach of the duty of loyalty.

None of these contentions withstands scrutiny. The instructions added after deliberations had begun were CACI Nos. 303 (elements of breach of contract) and 361 (no duplicate contract and tort damages). CACI No. 303 had already been read to the jury in the context of plaintiff's claim against defendant for breach of contract, but after excusing the jury for the weekend, the court noticed that it had neglected to repeat the instruction as adapted for defendant's cross-claim against plaintiff. In giving the jury the

---

[5] Defendant expresses confusion as to whether plaintiff "is appealing the final judgment, or the denial of a new trial, and/or whether the appeal is taken as to the complaint or cross-complaint." We do not understand his confusion. Only the judgment is appealable. We further see no impediment to defendant's ability to address the *issues* plaintiff raises in her brief; all of the asserted errors arose during trial, whether they pertained directly to the complaint or the cross-complaint. While defendant complains that plaintiff's arguments are difficult to discern, defendant's responsive brief is itself deficient: It does not state the applicable standard of review, and it violates the appellate rules by asserting facts without supporting citations to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C).) We will disregard any factual statement made in either party's brief that does not comply with the appellate rules.

4

belated instructions when court resumed, the trial judge explained that his own oversight, not any failing of the parties, was the reason for the omission.

Plaintiff fails to show that these instructions were incorrect, inapplicable to the procedural and factual circumstances presented, or prejudicial. The court was following its duty to instruct on all causes of action, rather than leave the jury without guidance as to any one of them. Neither party would have been served had the court failed to apply the instructions to defendant's obligation to prove the elements of his breach of contract claim. Plaintiff's complaint that the judge lied about the omission's being his fault is without support in the record; moreover, she fails to show how it adversely affected her position at trial or created any other unfairness. At best she asserts vaguely that without the additional instructions defendant "could not have prevailed," which amounts to a suggestion that without guidance, the jury would not have understood how to evaluate the evidence against her, all to her advantage. Plaintiff does not specifically take issue with CACI No. 361, an immaterial omission, since plaintiff was awarded no damages. Neither abuse of discretion nor prejudice has been shown with respect to either CACI No. 303 or No. 361.

In any event, plaintiff clearly waived any problem associated with the late instructions. Out of the presence of the jury, the court announced that it intended to remedy its omission by adapting CACI No. 303 to defendant's cross-complaint, and to give the jury CACI No. 361. The court explained to plaintiff what the new instructions would tell the jury, and plaintiff responded, "Excellent, Your Honor."

Later, when the jury asked a question about CACI No. 303, some discussion ensued among the judge and the parties. The court noted that with the exception of a typographical error which it corrected, no additional response was necessary, as the instruction was written correctly. To that plaintiff responded, "Perfect. Thank you, Your Honor." Although the jury posed no further questions on this issue, plaintiff infers that their confusion over the additional instructions led to their verdict in defendant's favor.

5

She fails to show that the asserted confusion resulted from "conflicting and misleading instructions," that the confusion persisted after the typographical correction, or that it was the reason the jury reached a verdict in defendant's favor.

Alternatively, plaintiff suggests that the $3,545 award was not based on the evidence, but had to be the result of defendant's questions during plaintiff's testimony and his later request for this amount at closing argument. Plaintiff argues that because defendant had billed her for $12,250 and asked for $18,000 in his cross-complaint,[6] the reduction on the special verdict form to $3,545 is "not congruous with law." In essence, then, plaintiff is complaining that the jury could not reasonably have found defendant to have proved his case unless they believed he was entitled to all of the amount originally claimed. This point is at best untenable. In any event, its premise is faulty. The $3,545 amount was fully explained during plaintiff's trial testimony: The original invoice showing $12,250 due included an $8,705 advance fee for three days of arbitration, which was later reduced to one day. Simple subtraction yielded exactly $3,545, which plaintiff admitted she had not paid defendant. Defendant's request for this amount during his argument to the jury unquestionably reflects the evidence presented at trial.

Plaintiff next takes issue with the "malice, oppression and deliberate misrepresentations of the Defendant's Closing Statement." She does not point to anything in the record to support this characterization, but only charges defendant with a "reprehensible and malicious" manner in which he "ranted," repeatedly pointed in plaintiff's face from four feet away,[7] and pronounced her a liar.

Although plaintiff's failure to cite the record should serve to forfeit her contention, we have examined the transcript of defendant's closing argument anyway. Defendant did

---

[6] We cannot confirm this fact, as the cross-complaint is not in the record.

[7] The record does not indicate that any gestures were directed at plaintiff's face.

not, as plaintiff claims, falsely state that he would never have taken the case if he had known it was against his 'colleague' Fenn Horton III, Esq." He stated only that had he known plaintiff's true motive for proceeding against Horton, he would not have taken her case. That motive, as he recalled plaintiff's testimony,[8] was to "bring . . . [law firms] to their knees for acting outside her belief, whatever that is, to act ethically, whatever she believes that is, and regardless of the cost . . . or even apparently the result." Plaintiff acknowledged that she was suing four independent lawyers in order to express her strong ethical beliefs about them.

Defendant did point out plaintiff's unfulfilled promise to bring experts to court; her refusal to do so, even when asked about them on cross-examination, indicated to defendant "that possibly she never had any retained experts at all. Or if she did retain experts, they weren't going to testify favorably on her case. Otherwise you would expect them to be here. So it's either she lied or they weren't going to testify in her favor." Defendant raised the subject of experts again later by pointing out that to prove a breach of fiduciary duty, plaintiff needed expert testimony to show what a reasonably careful attorney would do under similar circumstances. Plaintiff, however, had presented no such expert testimony "even though she said experts were retained. As I said, the reasonable inference from that statement to you is that she lied, never had them, or she told you the truth but they were going to testify there was no breach of fiduciary duty."

---

[8] Defendant was apparently referring to plaintiff's testimony during examination by defendant. Noting the large settlement offer Horton had made and the even larger bills plaintiff had incurred in pursuing the case after defendant's withdrawal, defendant asked, "Don't you now wish you would have [*sic*] taken that offer?" Plaintiff replied, "Never." Asked why, she explained that "there were ethical issues and there were legal issues. And there were breach of fiduciary duty issues and there were fraudulent billing issues. And there were many other issues in that legal relationship that made me feel compelled to go the course." The Horton firm, she insisted, was suing its clients, presenting adhesive contracts, and "using their law licenses as extortion tools."

Defendant's closing argument thus amounted to nothing more than a fair comment on the evidence and an attempt to negate plaintiff's credibility by pointing out her inability or refusal to support her claim with expert testimony. We do not believe that any of defendant's closing remarks exceeded the permissible scope of argument. Attorneys—or parties representing themselves—have wide latitude to discuss merits of the case, to state their views as to what the evidence shows, and to advance reasonable inferences from that evidence. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 795.) A party may not, of course, make "personally insulting or derogatory remarks" about the opposing party or "impugn [that party's] motives or character." (*Ibid.*) But nothing in the record indicates that defendant engaged in such conduct.

Furthermore, plaintiff concedes that she did not object to anything defendant said in his argument. She claims that she did not want to "exacerbate the scene" and that she was unaware of "the untrue statements defendant was reading from a prepared document." But she does not identify those untrue statements, and her excuse for not objecting to offensive behavior is weak at best. " 'Generally a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished. . . . In the absence of a timely objection the offended party is deemed to have waived the claim of error through his participation in the atmosphere which produced the claim of prejudice.' " (*Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285, 303.) Accordingly, if there was anything truly harmful in defendant's argument, it was incumbent on plaintiff to object so that the court could give a curative admonition to the jury and thus avert or reduce any prejudice resulting from the offending remarks.

Plaintiff's final contention is that the trial court abused its discretion by refusing her request for a readback of defendant's testimony. She points us to two places in the reporter's transcript which contain defendant's answer to plaintiff's question about what action he took to avoid prejudicing her by withdrawing as her attorney. Defendant

8

responded that he had "disclosed to Judge Baines [and] to opposing counsel that [he] would be appearing in court for the purposes of withdrawing from the case." Later in his testimony he mentioned again that he had raised his concern about the "conflict" between him and plaintiff with Judge Baines, and "it was confirmed with the court that there was an irreparable breakdown of the attorney/client relationship."

On neither of these occasions does the transcript reflect any surprise experienced by plaintiff, much less an objection. Plaintiff complains that the court "refused" to let her "direct" the reporter to read back defendant's testimony; but she does not indicate where in the record she made this request, why a readback was necessary, or why the asserted ruling prevented her from addressing the issues raised in her complaint. Moreover, plaintiff fails to go beyond her bare assumption that it is improper for counsel to report an attorney-client conflict in the course of a request to withdraw from representation of the client. No authority or sound policy supports this view, either in the abstract or as applied in this case.

In short, plaintiff simply failed to prove her case to the jury. She tried to show that defendant should have done more for her in her litigation against Horton, while disputing the amount he charged for his limited representation. Defendant's position was that he had told plaintiff at the outset that her case against Horton had no merit, but he would represent her only for the purpose of obtaining a fair settlement. His withdrawal from her case, he told the jury, was required as a matter of professional responsibility once he concluded that their positions were adverse. In his affirmative case, defendant did prove that he performed the claimed legal services for plaintiff, for which he was owed $3,545. The jury accordingly awarded him the amount to which he was entitled according to the evidence presented at trial.

"An attorney's duty is to maintain only such actions as appear to him legal or just. (Bus. & Prof. Code, § 6068, subd. (c).) 'When an attorney loses faith in his cause he should either retire from the case or dismiss the action.' [Citation.]" (*Kirsch v. Duryea*

9

(1978) 21 Cal.3d 303, 309-10.)  "[A]n attorney is often confronted with clashing obligations imposed by our system of justice. An attorney has an obligation not only to protect his client's interests but also to respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice . . . The attorney's choice to honor the public obligation must be shown to have been so manifestly erroneous that no prudent attorney would have done so."  Here, as in *Kirsch*, "defendant was confronted with a choice between his duty to advance his client's cause by continuing to prosecute the action and his duty to fair administration of justice to refuse to maintain actions believed to lack merit." (*Id*. at p. 309.)  He resolved it by consulting Judge Baines and eventually withdrawing from representation on a meritless case pursued by plaintiff for reasons defendant found unjustifiable and contrary to his public obligation.  (See Rules Prof. Conduct, rule 3-700(C) [grounds for withdrawal of counsel].)  Plaintiff fails to show any error or any prejudice arising from the conduct of the trial.

## *Disposition*

The judgment is affirmed.  Defendant is entitled to his costs on appeal.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.